# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 20, 2007**

Charles R. Fulbruge III
Clerk

No. 06-10104

MICHAEL RAY RICHARDSON,

Petitioner-Appellee,

v.

DAN JOSLIN,
Warden, Federal Correctional Institution, Seagoville,

Respondent-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, REAVLEY and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Michael Richardson, while serving his sentence for conspiracy to commit money laundering, participated in the Residential Drug Abuse Treatment Program ("RDAP") conducted by the Bureau of Prisons ("BOP") with the understanding that he was eligible for a reduction in his sentence should he successfully complete the program.  Upon Richardson's completion of the residential

segment of the RDAP, the BOP determined that he was ineligible for a reduction because of the presence of firearms at his house at the time evidence of his money laundering activities was gathered.

Richardson appealed that determination to the highest level of the BOP, but to no avail, so he filed the instant petition for writ of habeas corpus. Rejecting the findings, conclusions, and recommendation of the magistrate judge, the district court issued the writ on the ground that the BOP's findings are contrary to the BOP's own regulations and are therefore arbitrary and capricious and a violation of Richardson's right to due process. Because Richardson has no liberty interest in a sentence reduction, and the BOP has discretion to consider the full nature of the crime and determine Richardson's eligibility, there was no due process violation, so we reverse and render judgment for the respondent.

I.

According to his presentence investigation report ("PSR"), Richardson was a participant in a large-scale drug trafficking organization distributing methamphetamine and marihuana, the proceeds of which he laundered. The PSR also indicated that, two months before his arrest, officers executed a search warrant at a house he shared with his wife, mother, and children. The officers seized two handguns, marihuana, drug ledgers, and currency. The guns were eventually returned to Richardson's mother, who owned them.

Once Richardson was incarcerated, his eligibility for a sentence reduction under the RDAP program was evaluated.[1] He was advised in writing that his

---

[1] The RDAP program exists pursuant to a statute that grants discretion to the BOP to provide alternative conditions of confinement for prisoners who have completed the program. 18 U.S.C. § 3621(e)(2)(A). In addition, upon completion of the program the prisoner's sentence "may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." § 3621(e)(2)(B).

(continued...)

offense did not exclude him from participation in the program or render him ineligible for the sentence reduction. He did, however, execute an "Agreement to Participate" that included a notice that the eligibility determination was provisional and might later be changed.

After completing the residential portion of the RDAP, Richardson was considered for placement in the community-based portion of the program. That process included a final review of his eligibility for early release. Although the correctional center staff determined Richardson was eligible for a sentence reduction, the BOP regional administrator disagreed in light of the weapons present at Richardson's house. The administrator concluded that the presence of the weapons rendered Richardson ineligible under BOP regulations that exclude inmates from consideration for a reduction if their current offense was a felony that "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another . . . ." § 550.58(a)(1)(vi)(C).

Richardson appealed through the BOP's administrative process and was denied relief at all three levels of review. The warden, the regional director, and the Administrator for National Inmate Appeals concluded that the presence of

---

[1] (...continued)
The BOP has established regulations governing which prisoners are eligible for early release under the RDAP. Not eligible are

(vi) Inmates whose current offense is a felony:

(A) That has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or

(B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or

(C) That by its nature or conduct, presents a serious potential risk of physical force against the person or property of another . . . ."

28 C.F.R. § 550.58(a)(1).

the firearms left Richardson ineligible for a sentence reduction despite his completion of the residential portion of the RDAP.

Richardson's habeas petition asserts that the BOP violated his right to procedural due process by arbitrarily revoking his eligibility for a reduction in sentence upon completion of the RDAP. The district court issued the writ after concluding that the BOP had failed to apply its own regulations in determining Richardson's eligibility, and thus the determination that he was ineligible was an abuse of discretion and a violation of the right to procedural due process.

## II.

We review a grant of habeas relief for clear error with respect to findings of fact and de novo for issues of law. Ramirez v. Dretke, 396 F.3d 646, 649 (5th Cir. 2005). Relying on United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), the district court held that the BOP had arbitrarily and capriciously applied its own regulations, specifically § 550.58(a)(1)(vi)(C),[2] which constituted an abuse of discretion and violation of Richardson's right to procedural due process.

The district court's Accardi analysis is misapplied. The Accardi doctrine "stands for the unremarkable proposition that an agency must abide by its own regulations." Chevron Oil Co. v. Andrus, 588 F.2d 1383, 1386 (5th Cir. 1979). Thus, "an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination." United States v. Morgan, 193 F.3d 252, 266 (4th Cir. 1999). See also Alamo Express, Inc. v. United States, 613 F.2d 96, 98 (5th Cir. 1980). In Morgan, where BOP regulations required that a prisoner have competent representation in a hearing before being subject to forcible medication, the

---

[2] The district court referred to the BOP's Program Statement 5162.04 § 7(c), which repeats verbatim § 550.58(a)(1)(vi)(C), the regulation relied on by the BOP administrators.

court held, 193 F.3d at 265-67, that failure to provide such representation would render the result of the administrative hearing invalid. In Alamo Express, where Interstate Commerce Commission regulations required telephonic notice and comment before the granting of an Emergency Temporary Authority permit, this court held, 613 F.2d at 98, that failure to give notice and allow for comment meant that the grant of the permit was invalid.

Richardson, however, received all the procedural safeguards to which he was entitled under the statute and regulations. His case was reviewed internally by the prison officials, then by the regional director, in accordance with BOP policy. The regional administrator's determination was then reviewed at three levels, as provided for by regulation.

Furthermore, the BOP program statement on which the district court relied requires that the officials "carefully examine the entire Offense Computation section of the PSI and . . . the Offense Conduct section." BOP Program Statement 5162.04 § 7(c). Accordingly, each official who reviewed Richardson's case referred to findings in the PSR in determining his ineligibility. In fact, it was during this required review of the PSR that BOP administrators found evidence of the presence of the handguns. There is no indication that BOP officials failed to examine Richardson's record.

The district court did not find that the BOP had failed to provide any required process, but rather that in applying the process the BOP came to the wrong conclusion and abused its discretion. This is not a basis for an Accardi violation. If it were, review under Accardi would become a vehicle for district courts to engage in de novo review of any agency determination made pursuant to its own internal regulations. The BOP did not violate Richardson's right to due process, but instead the BOP granted Richardson all the procedure required by regulation.

III.

The district court also failed to answer the threshold question necessary for any finding of a violation of a prisoner's right to procedural due process: whether he had a "'liberty' interest" that the prison action implicated or infringed. Meachum v. Fano, 427 U.S. 215, 223-224 (1976). In the prison context, a liberty interest is created in one of two ways: Either the Due Process Clause confers a liberty interest, see Sandin v. Connor, 515 U.S. 472, 479 n.4 (1995) (citing Vitek v. Jones, 445 U.S. 480, 493-94 (1980)), or such an interest is created by the state through a statute, id. at 477-78, 483-84.

The Due Process Clause confers a liberty interest in punishment that is not "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime." Id. at 479 n.4. Thus, in Vitek the Court concluded that the involuntary transfer of a prisoner to a state mental hospital for treatment was sufficiently different from the typical punishment that it implicated the Due Process Clause regardless of any state regulation. Id. (citing Vitek, 445 U.S. at 493-94). Likewise, "independent of any state regulation, an inmate had a liberty interest in being protected from the involuntary administration of psychotropic drugs." Id. (citing Washington v. Harper, 494 U.S. 210, 221-22 (1990)). So long, however, as the punishment is "'within the normal limits or range of custody which the conviction has authorized the State to impose,'" there is no violation of a protected liberty interest conferred by the Due Process Clause. Id. at 478 (quoting Meachum, 427 U.S. at 225).

Where the Due Process Clause does not create a liberty interest, the government can create one by statute. Id. at 483-84. Such a statute confers a liberty interest that is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (citing Harper, 494 U.S. at 221-22; Vitek, 445 U.S. at 493). For example, an action that "inevitably affect[s] the duration of [a] sentence" might violate a liberty interest created by statute. Id. at 487.

The hallmark of a statute that has not created a liberty interest is discretion. Where the statute grants the prison administration discretion, the government has conferred no right on the inmate. Meachum, 427 U.S. at 226-28.[3] Thus, a "protected liberty interest exists only when a regulation uses 'mandatory language to place a substantive limit on official discretion.'" Rublee v. Fleming, 160 F.3d 213, 217 (5th Cir. 1998) (quoting Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998) (quoting United States v. Tubwell, 37 F.3d 175, 179 (5th Cir. 1994))). A unilateral expectation of certain treatment is insufficient; a prisoner must "have a legitimate claim of entitlement to it." Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995).

The Due Process Clause does not itself confer a liberty interest in a sentence reduction for completion of an RDAP. The denial of Richardson's eligibility does not impose a punishment "'qualitatively different' from the punishment characteristically suffered by a person convicted of crime." Sandin, 515 U.S. at 479 n.4. The BOP's determination means only that Richardson will serve the remainder of his original sentence under typical circumstances.

In this case, not only does the Due Process Clause not create a protected liberty interest, neither does any statute or regulation. The grant of discretion to the BOP in § 3621(e)(2)(B) indicates that no entitlement and, hence, no liberty

---

[3] The Court has cautioned against concluding that the converse of this statement is true: Mandatory language does not necessarily create a protected liberty interest. Sandin, 515 U.S. at 483 ("[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.").

interest, was created. In Rublee, this court addressed the precise issue of whether sentence reductions offered under § 3621(e)(2)(B) for completion of an RDAP created a liberty interest. We held that "[t]here is no mandatory language requiring that inmates be released upon completion of the drug-treatment program, and thus Rublee had no protected liberty interest in receiving a § 3621(e)-(2)(B) sentence reduction." Rublee, 160 F.3d at 217.[4] Likewise, Richardson has no protected liberty interest in receiving a § 3621(e)(2)(B) sentence reduction, and there can be no procedural due process violation.[5]

Richardson counters, however, that the BOP action does in fact impose an "atypical and significant hardship" precisely because it "affect[s] the duration of his sentence" by extending his confinement beyond the date of his release had he received a reduction for completion of the RDAP. This argument puts the cart before the horse and assumes Richardson was entitled to the reduction, thereby rendering the BOP's later determination of his ineligibility a deprivation.

Richardson, however, was not entitled to the reduction, because Congress has granted the BOP broad discretion in determining whether to reduce the sen-

---

[4] See also Lopez v. Davis, 531 U.S. 230, 241 (2001); Wottlin, 136 F.3d at 1037 (finding due process claim lacks merit because defendant can identify "no portions of Program Statement 5330.10 that mandate the granting of an early release to an inmate who completes the Program."); Venegas v. Henman, 126 F.3d 760, 765 (5th Cir. 1997) ("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty interest.").

[5] Richardson argues that this court recognized, by inference, a protected liberty interest in a § 3621(e) reduction in Royal v. Tombone, 141 F.3d 596 (5th Cir. 1998). There we held that a change in a BOP regulation did not deprive Royal of a protected liberty interest in a reduction, because he was never eligible for the reduction even before the change. Id. at 603. Richardson would have us draw the inference that had Royal been eligible before the change, he would have had a protected liberty interest in the reduction. Such an inference is not justified and would directly conflict with this court's holdings in Wottlin and Venegas, which predate Royal. If Royal stood for the proposition Richardson suggests, it would violate "the firm rule of this circuit that one panel may not overrule the decisions of another." United States v. Taylor, 933 F.2d 307, 313 (5th Cir. 1991).

tence of a prisoner who has successfully completed an RDAP. § 3621(e)(2)(B); Lopez v. Davis, 531 U.S. 230, 241 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment."). Because Richardson was not entitled to the reduction, the BOP's action is not a deprivation of a protected liberty interest and does not affect the duration of his sentence; he will serve no more time than that of his original sentence.

The judgment is REVERSED, and judgment is RENDERED in favor of the respondent.[6]

---

[6] Because the BOP did not violate Richardson's right to due process in concluding that he was ineligible for a sentence reduction, it is unnecessary for us to address whether the district court exceeded its authority by granting a one-year sentence credit and ordering Richardson's immediate release.