IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 12, 2008

Charles R. Fulbruge III
Clerk

No. 07-30748
Summary Calendar

BRENDA P. HYDE,

                                          Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                                          Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:02-CV-2860

Before SMITH, BARKSDALE, and ELROD, Circuit Judges.
JERRY E. SMITH, Circuit Judge:[*]

    Brenda Hyde applied for Social Security disability benefits. An adminis-
trative law judge ("ALJ") determined, after a hearing, that Hyde was not disa-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

bled as defined in 42 U.S.C. § 423(d)(1)(A), and that became the final decision of the Commissioner of Social Security. Hyde sought judicial review, and the district court affirmed. Hyde appeals, asserting that the Commissioner, through the ALJ, failed to satisfy his obligation to develop the record. Specifically, Hyde contends the Commissioner did not abide by his own regulations and re-contact her treating physician to obtain additional information on realizing that the records initially received were inadequate. We agree that the Commissioner did not comply with the regulations, but Hyde has failed to show she was prejudiced, so we affirm.

I.

Hyde applied for disability benefits in June 1999. The amended onset date for her disability, primarily complications from diabetes, was December 24, 1998. Her application indicated that she had two primary physicians, William Stallworth and Waldo Holt. With Hyde's permission, the agency requested and offered to pay for her medical records from both doctors. Stallworth submitted records spanning 1984 to 1994, and Holt submitted a treatment record from a single visit in May 1999. The agency issued an initial denial of Hyde's claim thirty days after receiving the application.

In September 1999, Hyde requested that the agency reconsider its denial and indicated that she had visited Holt since she first filed her claim. On September 28, the agency received a second record from Holt summarizing her symptoms and offering his opinion that Hyde was unable to operate a keyboard for prolonged periods. On November 8, the agency received a letter indicating Hyde had retained counsel, stating that Hyde was a patient of Holt's, and requesting that the agency procure records from him.

The agency subsequently directed Hyde to undergo a consultative physical exam with Dr. Mary Ann Richter on December 15 and a consultative two-dimen-

sional echo stress exam with Dr. Emmett Chapital on January 24, 2000. On February 7, the agency issued its denial of Hyde's claim on reconsideration. The notice to Hyde indicated that, in denying her claim a second time, the agency relied on the records and reports previously received from Stallworth and Holt and the reports of Richter and Chapital. The notice further stated that no other reports were obtained, because those noted above were sufficient to render a decision on the claim.

In March, Hyde requested a hearing before an ALJ. In the statement filed with the request, she indicated she was still under Holt's care and had seen him in September and November 1999 and February 2000. On June 23, the agency notified Hyde of her hearing, scheduled for August 1, 2000; the ALJ issued a pre-hearing order directing Hyde's counsel to update all medical evidence, specifically mentioning that she needed to update any records from Holt. The order also stated that "[f]ailure to submit any medical evidence will constitute an acknowledgment by claimant and the representative that such documents are not relevant to the disposition of the case." Hyde submitted updated records from the Medical Center of Louisiana on July 17.

The ALJ conducted the hearing on August 1 and ruled on August 21 that Hyde was not disabled. On July 25, 2002, the Appeals Council denied Hyde's request for review, rendering the ALJ's decision the Commissioner's final administrative decision. Hyde appeals the district court's conclusion that the agency adequately developed the record with respect to her records.

## II.

On appeal, we will uphold an ALJ's determination that a claimant is not disabled if it is based on substantial evidence from the record as a whole and if proper legal standards were applied in consideration of the evidence. See 42 U.S.C. § 405(g); Higginbotham v. Barnhart, 405 F.3d 332, 335 (5th Cir. 2005)

(citing Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990)). It is the duty of the ALJ "to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996) (citing Kane v. Heckler, 731 F.2d 1216, 1219 (5th Cir. 1984)). "When [the ALJ] fails in that duty, he does not have before him sufficient facts on which to make an informed decision. Consequently, his decision is not supported by substantial evidence." Kane, 731 F.2d at 1219. Failure to develop the record as required by agency regulation means the ALJ failed in his duty to develop the record adequately.[1] We will reverse an ALJ's decision as not supported by substantial evidence if the claimant shows that (1) the ALJ failed to fulfill his duty to develop the record adequately and (2) the claimant was prejudiced thereby. Brock, 84 F.3d at 728.

## A.

Hyde contends that the ALJ violated several agency regulations found in 20 C.F.R. § 404.1512 and therefore failed adequately to develop the record. First, she asserts that the ALJ violated subsection (d) by failing to make "every reasonable effort to help [Hyde] get medical reports" from Holt. § 404.1512(d). The regulation defines "every reasonable effort" to mean that the agency "will make an initial request for evidence from [the claimant's] medical source and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one followup request to obtain the medical evidence necessary to make a determination." § 404.1512(d)(1).

The agency made initial requests for records from Holt and Stallworth,

---

[1] See Chevron Oil Co. v. Andrus, 588 F.2d 1383, 1386 (5th Cir. 1979) ("Accardi stands for the unremarkable proposition that an agency must abide by its own regulations.") (citing Service v. Dulles, 354 U.S. 363, 372 (1957)); Richardson v. Joslin, 501 F.3d 415, 418 (5th Cir. 2007) (noting instances of agency failure to follow regulations resulting in the invalidation of the agency determination).

the two treating physicians identified by Hyde, on June 18, 1999. Those requests included that the agency would pay twenty dollars for information received within thirty days. In response, Stallworth provided records spanning from 1984 through 1994, and Holt provided a progress report from May 1999.

Having requested and received the records, the agency satisfied the requirements of § 404.1512(d). There is no requirement that the agency or the ALJ, having received some records from Holt, follow up with Holt to ensure that all relevant records had been sent.[2] Additionally, § 404.1512(d) states only that the agency will develop the record for twelve months preceding the month when the claimant files an application; thus, records made after the application is filed are not included.

Hyde asserts the agency failed to obtain records from September and November 1999 and February 2000, none of which preceded her application. Nonetheless, either the agency requested subsequent records or Holt submitted them on his own initiative, because the agency received Holt's September 1999 opinion after the initial denial but before the denial on reconsideration. By requesting and receiving medical reports from Holt and Stallworth, the agency and ALJ fulfilled their obligation to develop the record according to § 404.1512(d).

Hyde next contends that the agency and ALJ failed to develop the record in accordance with § 404.1512(e), which addresses the agency's obligation to recontact treating physicians where the evidence received "is inadequate . . . to determine whether [the claimant is] disabled." § 404.1512(e). In such a situation, the agency

> will first recontact [the] treating physician . . . to determine whether the additional information . . . need[ed] is readily available. [The agency] will seek additional evidence or clarification from [the claimant's] medical source when the report from [the claimant's]

---

[2] See § 404.1512(d)(1) ("[I]f the evidence has not been received, we will make one followup request to obtain medical evidence . . . .") (emphasis added).

5

medical source contains a conflict or ambiguity that must be re-
solved, the report does not contain all the necessary information, or
does not appear to be based on medically acceptable clinical and lab-
oratory diagnostic techniques. [The agency] may do this by request-
ing copies of [the] medical source's records, a new report, or a more
detailed report from [the] medical source . . . .

§ 404.1512(e)(1). The agency, however, "may not seek additional evidence or clarification from a medical source when [it] know[s] from past experience that the source either cannot or will not provide the necessary findings." § 404.1512-(e)(2).

The ALJ discounted Holt's reports because they lacked "clinical findings or results of objective diagnostic tests that support [his] conclusions and opinions." That statement expresses the ALJ's view that Holt's reports did "not contain all the necessary information" and did "not appear to be based on medically acceptable clinical and laboratory diagnostic techniques," § 404.1512(e)(1), conditions expressly triggering the agency's obligation to re-contact Holt. Without evidence that the agency knew from past experience that Holt could not or would not provide such information, the regulation required the ALJ to re-contact Holt.

The only evidence offered of Holt's inability or unwillingness to provide such information is the paltry production resulting from the agency's first request to Holt for records. He did provide records (though they were limited in nature) on the agency's initial request, and he subsequently provided an additional record, either on his own or in response to a subsequent request; thus, the agency has not established that it knew from experience that re-contacting Holt was futile.

Instead, the Commissioner asserts it was unnecessary to re-contact Holt, because the ALJ had determined the evidence before him, namely the report from Richter's consultative exam, was adequate to determine whether Hyde was disabled. That, however, is not the standard found in the regulation for deter-

mining whether it is necessary to re-contact a treating physician. The duty to do so is not contingent on the adequacy of the record, but on the adequacy of the report received from the treating physician. The failure of the agency or ALJ to re-contact Holt was a violation of agency regulation and, hence, a failure adequately to develop the record; thus, the ALJ's decision is not supported by substantial evidence.

## B.

This does not end our inquiry; "[t]he failure of the ALJ to develop an adequate record is not . . . ground for reversal per se." Kane, 731 F.2d at 1220. The claimant must also show he was prejudiced by the inadequate record and that, had the ALJ complied with the regulation, he "could and would have adduced evidence that might have altered the result." Id. Hyde concedes that she has not affirmatively stated that additional records from Holt exist. Instead, she argues that she cannot afford to obtain the records, hence the need for the agency to procure them, and it would be circular to require her to produce the records as evidence that she was prejudiced by the agency's failure to obtain the very same records.

Hyde is correct that actual production of the records would be too high a bar for establishing prejudice. Our requirement, however, is that Hyde show she could and would have adduced evidence that might have altered the result. Her concession that the records may not actually exist undermines her claim of prejudice, because she cannot assert that she can and will produce the records.

Additionally, Hyde does not suggest that the additional records would supply the clinical evidence necessary to justify reliance on Holt's earlier opinion. Something more then a speculative assertion that medical records might exist and might clarify earlier records is necessary, such as perhaps a statement from the doctor that such records exist and do confirm an earlier diagnosis. Hyde,

however, did not show any prejudice from the ALJ's failure to re-contact Holt.

The judgment is AFFIRMED.